Defendant in error, H. T. Phelps, instituted this suit against the First State Bank of Eastland, the Texas State Bank of Eastland, and James Shaw, banking commissioner of Texas, who is in charge of said banks as liquidating agent. He pleaded an express contract with the First State Bank of Eastland, by which he was employed as an architect to prepare plans and specifications for a bank building, by the terms of which his compensation was to be 3 1/2 per cent. of the cost of the construction as compensation for preparing the plans and specifications, and 1 1/2 per cent. of such cost for architectural supervision the cost of the construction being estimated at the time at approximately $138,000. It was alleged that a contract was entered into between said bank and a contractor for the construction of the building according to the plans and specifications for $137,000; that, after the contractor began to perform his contract, a disagreement arose between him and the bank, and he abandoned the enterprise, whereupon the bank completed same; that, when the bank undertook to complete the building, it desired defendant in error to furnish, in addition to the architectural supervision which had been contracted for, additional supervision such as is usually furnished by a contractor; that thereupon the original contract was modified, and, as modified, defendant in error agreed to furnish said contractor's superintendence, and to make certain changes and modifications in the plans and specifications, which were desired by the bank, for an agreed compensation of 5 per cent. of the ultimate cost of the building, which additional services he alleged were rendered by him and were accepted by the bank. It was further alleged that the building was completed on January 19, 1921, at a cost of approximately $245,000; that defendant in error had been paid on account $7,930, leaving a balance owing him on the date of the completion of the building of $4,345.
As an alternative plea, it was alleged that, in the event plaintiffs in error should contend that the contract for changes in the plans and specifications and for additional supervision was not made, then he alleges that, at the request of said bank, he did alter, change, and modify the plans and specifications, and furnish architectural supervision for the entire construction, and additional supervision and superintendence usually furnished by the contractor, all of which were accepted by the bank, and for which it became obligated and bound to pay the usual, reasonable, and customary compensation for such services, which, it was alleged, was 5 per cent. of $245,500, the total cost of the construction of the building.
Facts were pleaded showing that defendant in error had fixed a mechanic's lien against the property by filing his sworn itemized statement in the office of the county clerk of Eastland county within the time provided by law. Further allegations were that, subsequent to the fixing of the lien, plaintiff in error Texas State Bank acquired some character of interest in and to the building and lots in controversy, and said bank was made a party defendant; that both the First State Bank of Eastland and Texas State Bank of Eastland are in the hands of James Shaw, banking commissioner, for liquidation, and he was made a party defendant along with the Texas State Bank in order that the rights of all parties might be adjudicated and the alleged lien foreclosed as to all parties claiming title to or interest in said property.
The case was tried below before the court without the aid of a jury, resulting in a judgment in favor of defendant in error against First State Bank of Eastland for $3,345, together with 6 per cent. interest per annum thereon from January 19, 1921, the date of the completion of the building, and, as against all of the parties, the judgment decreed a foreclosure of the mechanic's lien on the property involved. From that judgment all the defendants below have prosecuted a writ of error to this court.
The case is briefed under eight assignments of error. Assignments Nos. 1, 2, 4, and 5 will be considered together. These assignments present the question that the court erred in finding that the alleged contract was modified and in rendering judgment in favor of defendant in error for the balance due under the modified contract, because there was no evidence that the First State Bank made, or authorized any one in its behalf to make, such modified contract. Defendant in error testified that the new contract made after the trouble arose between the bank and the contractor was oral, and was made in behalf of the bank by one W. B. Smith. There is no evidence that, in making such contract, if he did make it, Smith was authorized to act for the bank. Defendant in error admits in his brief that, because of his failure to establish Smith's authority to act for the bank, he showed no right of recovery upon his alleged express contract for changes in plans and specifications and additional superintendence and supervision. But it does not follow that these assignments present error. They are predicated upon the assumption that the *Page 902 
court rendered judgment upon the express contract. We cannot so assume, for no findings of fact or conclusions of law were filed, and, since the judgment has support under the pleading of quantum meruit, we shall assume, as is clearly indicated by the judgment, that recovery was had upon that alternative pleading. These assignments will be overruled.
The third, sixth, and seventh assignments are construed to present the question that there was no evidence supporting the judgment under the pleading of quantum meruit. We have experienced some difficulty in understanding the exact contention under these assignments. There is an abundance of evidence that 5 per cent. of the total cost of the completed building would be reasonable compensation for the services rendered. We do not understand plaintiffs in error to contend to the contrary, except in this particular: The evidence disclosed that, at the time the contractor abandoned the construction of the building, one-third of it had been completed. The extra superintendence and supervision furnished by defendant in error was for two-thirds of the building. The witnesses testifying in behalf of defendant in error on the question of the reasonable and customary compensation for services of the character detailed were not asked the specific question as to the reasonable charge for such services for the last two-thirds of the building, but their testimony related to the construction of a whole building. It seems to be the contention that, in the absence of evidence relating to the exact situation existing in the instant case, where the extra superintendence and supervision began after the building was one-third completed, there is no evidence supporting the quantum meruit theory. We have never heard of a contention like that before, and are at a loss to know how to discuss it. It impresses us as being wholly without merit. No reason is perceived why the same percentage should not apply to any portion of the work as that applicable to the whole. These assignments are overruled.
The eighth assignment complains of that portion of the judgment awarding interest at the rate of 6 per cent. per annum from January 19, 1921, to date of judgment. The money judgment was against the First State Bank alone. The other parties were joined as defendants for foreclosure purposes only, and the record does not disclose what interest, if any, the Texas State Bank had in the property. The petition of defendant in error upon which he went to trial alleged that the First State Bank was in the process of liquidation and in the hands of James Shaw, banking commissioner. There is neither allegation nor proof of the date when said bank became insolvent and passed into the hands of the commissioner for liquidation. Absent allegations and proof of this fact, no interest whatever should have been allowed upon the claim. Had this fact been alleged and proved, interest accruing prior to the date of insolvency could properly have been allowed. The general rule is that, if the property of an insolvent passes into the hands of a receiver, or an assignee, or, in case of a state bank, into the hands of the banking commissioner for liquidation, the running of interest ceases. Thomas v. Western Car Co., 149 U.S. 95, 13 S.Ct. 824, 37 L.Ed. 663; White v. Knox,111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603; American Nat. Bank v. Williams (C.C.A.) 101 F. 943; Gaston Ayres v. J. I. Campbell Co.,104 Tex. 576, 140 S.W. 770, 141 S.W. 515; Brazelton Johnson v. J. I. Campbell Co., 49 Tex. Civ. App. 218, 108 S.W. 770; First Nat. Bank of Houston v. J. I. Campbell Co., 52 Tex. Civ. App. 445, 114 S.W. 887; Atlanta Nat. Bank v. Four States Grocer Co. (Tex.Civ.App.) 135 S.W. 1135; St. Louis Union Trust Co. v. St. L. S. F. Ry. Co. (Tex.Civ.App.)146 S.W. 348; 6 Tex.Jur. § 179, p. 328. No reason can be perceived why the general rule is not applicable to the facts in the instant case. Defendant in error cites the decision of this court in the case of Shaw v. Morrison, 14 S.W.2d 953. In the light of the foregoing authorities, which were recently discovered by the member of this court who wrote the opinion in the Shaw v. Morrison Case, we question the soundness of our opinion therein on the interest question.
The judgment below erroneously awarded interest on the claim from January 19, 1921, to date of judgment, and, since defendant in error neither pleaded nor proved facts showing himself entitled to any interest, it should not have been allowed. It is accordingly our order that the judgment of the court below be so reformed as to disallow the claim for interest, and that, as reformed, the same be affirmed. The costs of the appeal will be taxed against defendant in error. Reformed and, as reformed, affirmed.
FUNDERBURK, J., disqualified and not sitting.
 Supplemental Opinion.